UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TERRY RAY TWITTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02822-TWP-DML |
| | ) | |
| WEXFORD OF INDIANA, LLC, | ) | |
| DEANGELA LEWIS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants' Wexford of Indiana, LLC ("Wexford") and DeAngela Lewis ("Ms. Lewis") (collectively "Defendants'). (Dkt. 38) and Defendants' Motion to Strike (Dkt. 45). Plaintiff Terry Twitty ("Mr. Twitty), a prisoner at Pendleton Correctional Facility, asserts that Wexford and Ms. Lewis were deliberately indifferent to his serious medical need by denying his physician's request for an offsite surgical consultation to repair the torn meniscus in his left knee. For the reasons explained below, the Defendants' Motion to Strike is **granted in part and denied in part** and their Motion for Summary Judgment is **granted.**

## I.    SUMMARY JUDGMENT STANDARD

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Schools*, , 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

The Seventh Circuit has "repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009); *see also Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). That is the case here. The Southern District of Indiana's Local Rule 56-1 shall be enforced. *See also McNeil v. United States*, 508 U.S. 106, 113 (1993).

## II. FACTUAL BACKGROUND

Mr. Twitty is a prisoner at Pendleton Correctional Facility. Dkt. 44-1, para. 2. In May 2019, he suffered an injury to his left knee and has been in severe pain ever since. *Id.* at paras. 4-5. Tylenol, Mobic, prednisone, steroid injections, and physical therapy failed to provide relief. Dkt. 38-3, p. 3. In November 2019, an MRI revealed that Mr. Twitty had a torn medial meniscus; his ACL and PCL were intact. *Id.*

His onsite physician recommended an offsite consultation with an orthopedic surgeon. Dkt. 44-3. On November 21, 2019, Dr. Mitcheff denied the physician's offsite consultation request. *Id.*; dkt. 38-3, p. 5; dkt. 46-3. Dr. Mitcheff wrote: "[Alternative Treatment Plan] for onsite care

and management. He needs a weight loss diet due to BMI of 34. Monitor his commissary. Recommend trial of insoles for his shoes and recommend sit down work only." Dkt. 38-3, p. 5.

Mr. Twitty filed an offender grievance regarding the denial of his offsite surgical consultation. Dkt. 46-2. Ms. Lewis provided the following response: "Mr. Twitty at this time surgery is not clinically indicated. Provider recommends you first lose weight, control your diet and commissary purchases. You also received gel insoles to help manage this on 12-9-19. If you have further concerns you will need to submit a healthcare request form." *Id.* at 3.

Ms. Lewis is not a medical professional and has no medical training. Dkt. 38-2, paras. 2-3. As the Regional Manager for Wexford, she would occasionally respond to prisoner grievances but had no authority to approve offsite medical procedures. *Id.* at paras. 6, 13. When she received Mr. Twitty's grievance, she reviewed his medical records and relayed the basis for Dr. Mitcheff's denial of the offsite consultation request to the Offender Grievance Manager. *Id.* at paras. 17-20. Based on her review of Mr. Twitty's medical records, she did not have concerns about the medical care he was provided. *Id.* at para. 21.

Mr. Twitty states that he has not been provided gel insoles and that he remains in severe pain, with only occasional relief from medication. Dkt. 44-1, paras. 5, 6.

Mr. Twitty does not know the name of the individual for Wexford who had final authority over approving and denying requests for offsite surgical procedures. Dkt. 38-1, pp. 62, 68.

### III. DISCUSSION

Mr. Twitty contends that Defendants were deliberately indifferent to his medical needs. Wexford seeks judgment as a matter of law arguing the evidence does not support a reasonable conclusion that it maintained an unconstitutional policy or custom that caused Mr. Twitty's outpatient request to be denied, or that the denial was made by Wexford's final decisionmaker. Ms.

Lewis contends that she is entitled to a judgment as a matter of law because the evidence also does not support a reasonable conclusion that she was personally involved in the decision to deny the outpatient request or that she turned a blind eye to Mr. Twitty's serious medical need. Before turning to the substantive arguments, the Court will first address Defendant's Motion to Strike.

### A. **Motion to Strike (Dkt. 45)**

The Defendants have filed a Motion to Strike unsworn statements in Mr. Twitty's response brief and hearsay statements that Mr. Twitty references in a sworn affidavit.[1]

### 1. **Statements in Response Brief**

The contested unsworn statements include the following:

> Defendant Lewis prevent[ed] Plaintiff's grievance from receiving due consideration from Indiana Department of Correction ("IDOC") officials when Ms. Lewis lied on the Grievance Response. (Dkt. 44, p. 2).

> First, Plaintiff submits that surgery was indicated or the on-site physician would not have requested a surgical consult for Plaintiff's knee. (Dkt. 44, p. 2).

> Plaintiff posits that his condition obviously requires surgery and that any physician operating competently would agree that Plaintiff's condition requires surgery. (Dkt. 44, p. 3).

The motion to strike these statements is **denied**. The Court interprets these statements as arguments in opposition to the motion for summary judgment. Rather than striking these statements, the Court will consider whether these statements are supported by admissible evidence. Any arguments that are not supported by admissible evidence lack merit and will not be successful.

### 2. **Statements in Affidavit**

In his affidavit, Mr. Twitty's affirms that prisoners Samuel Jackson ("Mr. Jackson") and Tremayne Chapman ("Mr. Chapman") also had requests for offsite surgical consultations that were

---

[1] As the Magistrate Judge previously explained, "The court disfavors collateral motions—such as motions to strike—in the summary judgment process. Any dispute over the admissibility or effect of evidence must be raised through an objection within a party's brief." Dkt. 48, p. 1 (quoting S.D. Ind. Local Rule 56-1(i)).

denied. (Dkt. 44-1, para. 9). But Mr. Jackson and Mr. Chapman have not submitted sworn affidavits in this case, their medical records have not been designated as evidence, and Mr. Twitty has not established that he has personal knowledge of their medical conditions, diagnoses, or treatments. Mr. Twitty's reference to Mr. Jackson and Mr. Chapman in his affidavit therefore runs afoul of Federal Rule of Civil Procedure 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Liberally construed, Mr. Twitty's affidavit asks the Court to take judicial notice of civil rights lawsuits that Mr. Jackson and Mr. Chapman filed about their medical care in prison. *See* dkt. 44-1, para. 9 (citing *Jackson v. Corizon, LLC, et al.*, Case Nos. 1:19-cv-2338-RLY-MJD; *Chapman v. Talbot, et al.*, 1:19-cv-3241-JMS-DML). A court may take judicial notice of an adjudicative fact that is both "not subject to reasonable dispute" and either 1) "generally known within the territorial jurisdiction of the trial court" or 2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Seventh Circuit has directed district courts to strictly adhere to the criteria established by Federal Rules of Civil Procedure 201 before taking judicial notice of pertinent facts. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997). Whether Wexford denied necessary offsite surgical consults for Mr. Jackson and Mr. Chapman is not a matter that is beyond reasonable dispute and therefore is not susceptible to judicial notice. The Court notes that Mr. Jackson's case was dismissed at summary judgment, and Mr. Chapman's case was dismissed following settlement. Even if these plaintiffs had prevailed on the merits of their claims, that would simply mean that a dispute was resolved in their favor, not that the matter

was beyond all reasonable dispute. *Id.* 1081-82. Accordingly, this motion to strike these statements in the  Affidavit is **granted**.

Mr. Twitty's affidavit also states that members of his onsite medical team—Dr. Talbot, Dr. Hellmon, and Nurse Practitioner Purdue—told him that they believed Mr. Twitty required surgery. The Defendants argue that these statements are inadmissible hearsay. The Court disagrees. Statements made an opposing party's "agent or employee on a matter within the scope of that relationship and while it existed" are not hearsay. Fed. R. Evid. 801(d)(2)(D). The record suggests that Dr. Talbot, Dr. Hellmon, and Nurse Practitioner Purdue were Wexford employees, and their statements about Mr. Twitty's need for a surgical consultation were matters within the scope of their employment. Accordingly, the motion to strike their statements as hearsay is **denied**.

### B. <u>Mr. Twitty's Eighth Amendment Claims</u>

#### 1.   Deliberate Indifference Standard

Because Mr. Twitty is a convicted prisoner, his medical treatment is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 772, 727-728 (7th Cir. 2016).

### 2.   Claim against Ms. Lewis

The undisputed evidence is that Ms. Lewis was a non-medical official with no authority to approve Mr. Twitty's offsite surgical consultation. Dkt. 38-2, paras. 2, 3, 6, 13. Mr. Twitty's offsite surgical consultation was denied by Dr. Mitcheff, not Ms. Lewis. Dkt. 38-3. Thus, Ms. Lewis was not personally involved in the decision to deny this offsite surgical consult, and she cannot be held liable for the denial. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation.") (cleaned up).

To the extent Mr. Twitty argues that Ms. Lewis violated his Eighth Amendment rights by responding to his grievance, this argument fails as well. A non-medical prison official may be deliberately indifferent when the official "knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Id.* at 781 (cleaned up). However, "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Giles v. Godinez*, 914 F.3d 1040, 1050 (7th Cir. 2019). Ms. Lewis did not turn a blind eye to Mr. Twitty's medical needs. She cooperated with the grievance investigation, reviewed his medical records, and saw that he was under the care of medical professionals. She was entitled to defer to the medical professionals' decisions and believe that they were providing him with adequate care.

Mr. Twitty's argument that Ms. Lewis somehow prevented his grievance from "receiving due consideration" or that she lied in her grievance response, dkt. 44, p. 2, is not supported by admissible evidence. Ms. Lewis did not have personal knowledge whether a surgical consultation was necessary or whether Mr.  Lewis had in fact received gel insoles; she merely cooperated with

the grievance investigation by relaying the information in Mr. Lewis' medical records. Accordingly, Ms. Lewis' motion for summary judgment is **granted**.

### 3. Claim against Wexford

When the defendant in a § 1983 lawsuit is a corporate entity acting under color of state law, the plaintiff may prevail in three ways. First, the plaintiff may show that the alleged unconstitutional conduct implements or executes an official policy adopted by the corporation's officers. Second, the plaintiff may show that the unconstitutional action was done pursuant to a widespread custom, even one that is not formally codified. Third, the plaintiff may prove that an actor with final policymaking authority within the entity adopted the relevant policy or custom. *Thomas v. Martija*, 991 F.3d 763, 773 (7th Cir. 2021) (citing *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978)).

There is no evidence that Mr. Twitty's offsite surgical consultation was denied pursuant to an official Wexford policy or that the denial was caused by a Wexford custom. There is no evidence that any prisoner's offsite surgical consultation request was denied other than Mr. Twitty's. This single instance is insufficient to show that Wexford has a custom that caused Mr. Twitty to suffer a constitutional violation because a plaintiff proceeding on an unlawful corporate custom claim must show numerous and widespread instances of constitutional violations. *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (holding that 4 incidents over approximately 11 months involving only the plaintiff was insufficient to show a widespread practice or custom).

Finally, there is no evidence that Dr. Mitcheff was Wexford's final policymaker on the issue of offsite surgical consultations. The Seventh Circuit has explained that for purposes of *Monell* liability "the authority to set policy, i.e., to adopt rules for the conduct of the government,

distinguishes a 'final policymaker,' whose decisions may subject a municipality to § 1983 liability, from an official who merely possesses 'authority to implement pre-existing rules.'" *Waters v. City of Chicago*, 580 F.3d 575, 582 (7th Cir. 2009) ("The evidence at trial established that Commissioner Rice was the final decisionmaker for purposes of terminating [transportation] employees and that she made the decision to terminate [plaintiff's employment. However, she was not a final policymaker for the City with respect to employment policy."). In this case, there is no evidence that Dr. Mitcheff was responsible for setting, rather than merely implementing, policies about offsite surgical consultations. Even if Dr. Mitcheff's decision to deny Mr. Twitty's offsite surgical request was "final," that fact, without more, would not create *Monell* liability against Wexford. Accordingly, Wexford's motion for summary judgment is **granted**.

## IV. CONCLUSION

The Defendants' Motion to Strike, dkt. [45], is **granted in part and denied in part**. The Defendants' Motion for Summary Judgment, dkt. [38], is **granted**. This case is now **dismissed**. Final judgment in accordance with this Order shall now issue.

**SO ORDERED**.

Date:   8/9/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

9

Distribution:

TERRY RAY TWITTY
990104
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Heather Terese Gilbert
CASSIDAY SCHADE LLP
hgilbert@cassiday.com

Marley Genele Hancock
CASSIDAY SCHADE LLP
mhancock@cassiday.com